STATE OF NORTH CAROLINA v. ALLEN LASSITER

No. 7214SC621

(Filed 25 October 1972)

1. Criminal Law § 91— denial of continuance — absent witness
   The trial court in a robbery prosecution did not err in the denial of defendant's motion for a continuance made on the ground that one of his witnesses was absent from the State at the time of the trial where the absent witness could testify only as a character witness for defendant and concerning certain statements which the victim made to him as to the events of the night of the robbery.

2. Criminal Law § 34— robbery case — evidence showing another crime — relevancy
   Evidence that a defendant charged with robbery told his victim shortly before the taking that he had "just shot a man" was relevant as showing a design on the part of defendant to put his victim in fear.

**3. Robbery § 4— aiding and abetting in robbery — sufficiency of evidence**
    The State's evidence was sufficient for submission to the jury
on the issue of defendant's guilt of armed robbery where it tended to
show that, while defendant himself may not have offered violence to
the victim, he entered her premises in company with two men who did,
stood by while they choked her and threw her to the floor and while
they threatened her life with a gun, "piled on" the cash register with
them while they took money from it, fled the premises immediately
after they did, and shortly thereafter was found by the arresting offi-
cers in the company of one of the men.

APPEAL by defendant from *Cooper, Judge,* 3 April 1972
Session of Superior Court held in DURHAM County.

Defendant was tried on his plea of not guilty to an indict-
ment charging armed robbery. The State's evidence in sub-
stance showed the following:

Between 7:00 and 8:00 p.m. on 21 January 1972 defendant
and two other men, one David Gilliard and the other believed
to be Bluford, entered "Elvira's Blue Dinette," a cafe operated
by Elvira Watson in Durham. Elvira had known defendant
previously. Defendant left a message with her for George
Husketh, saying: "Tell George I am in trouble again, he will
have to come up there and get me. . . . I just shot a man on
Enterprise Street." Elvira expressed doubt, but defendant
assured her it was true, saying that he shot the man because
"[h]e asked me for a cigarette and I told him I didn't have
one, and he jumped on me to take my cigarettes from me, and I
shot him." The three men then left, but returned about ten min-
utes later. Defendant asked Elvira for a beer. When she turned to
get it, she felt Gilliard's fingers "crammed down" her throat.
Gilliard slung her to the floor. When she started screaming,
Gilliard told Bluford, who had what looked like a sawed-off gun,
to shoot her. She screamed, "Henry (another name for defend-
ant) don't let him kill me, don't let him kill me."

Elvira testified that then "they" dived on the cash regis-
ter, taking fifteen to twenty dollars, that she "couldn't see whose
hands were actually going into the cash register, but all three
of them piled on it, including Mr. Lassiter," and that Gilliard
and Bluford then ran out. Defendant stayed behind and said:
"Miss Elvira, call the police." She told him to close the door
so that she could call, but when he got to the front door, he
ran out. Elvira did not know whether defendant got any of the
money, but he was standing there with the other two. He did

not touch her and he did not have a gun. When the police came, she named defendant as one of the robbers.

Defendant was arrested shortly after the robbery when the police found him with Gilliard sitting at a table in a piccolo room at a bootleg house, the first place the officers went in trying to locate him. He denied having been at Elvira's, but on the following day admitted having been there with Gilliard and a man he called "Butch Odom," though he denied knowing anything about a robbery.

Defendant offered no evidence. The jury found defendant guilty of common-law robbery. From sentence imposed, defendant appealed.

*Attorney General Robert Morgan by Associate Attorney Thomas E. Kane for the State.*

*Felix B. Clayton for defendant appellant.*

PARKER, Judge.

[1] Defendant assigns error to denial of his motion for a continuance made on the grounds that one of his witnesses, George Husketh, was absent from the State at the time of trial. "A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion." *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844. None was here shown. The absent witness was not an eyewitness. He could testify only as a character witness for defendant and concerning certain statements which the State's witness, Elvira Watson, made to him as to events of the night of the robbery. Defendant has failed to show either that the trial judge abused discretion in denying his motion for a continuance or how he was prejudiced thereby.

[2] Defendant next assigns error to the overruling of his objections to questions which the solicitor asked of the prosecuting witness concerning statements which defendant made to her shortly prior to the robbery to the effect that he "was in trouble again" and had "just shot a man on Enterprise Street." Defendant contends that this testimony was irrelevant to the issue of his guilt of the offense for which he was being tried and that it was prejudicial to him as tending to show that he

was guilty of a criminal offense other than that for which he was being tried. "It is well settled that in the trial of one accused of a criminal offense, who has not testified as a witness in his own behalf, the State may not, over objection by defendant, introduce evidence to show that the accused has committed another independent, separate criminal offense where such evidence has no other relevance to the case on trial than its tendency to show the character of the accused and his disposition to commit criminal offenses." *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839. But it is equally well settled that if such evidence "tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." Stansbury, N. C. Evidence 2d, § 91, p. 210. Here, one of the essential elements of the offense for which defendant was being tried was the taking of property against the will of its owner by violence or putting her in fear. *State v. Lawrence*, 262 N.C. 162, 136 S.E. 2d 595. Evidence that one charged with robbery told his victim shortly before the taking that he had "just shot a man" was certainly relevant as showing a design on the part of defendant to put his victim in fear. That the victim may not have believed the statement and therefore was not rendered fearful by it does not destroy its relevancy to show an intent on the part of defendant to frighten his victim. There was no error in overruling defendant's objections to the solicitor's questions.

[3] Defendant's motions for nonsuit were properly overruled. Viewed in the light most favorable to the State, the evidence disclosed that while defendant himself may not have offered violence to the victim, he entered her premises in company with two men who did, stood by while they choked her and threw her to the floor and while they threatened her life with a gun, "piled on" the cash register with them while they took fifteen or twenty dollars from it, fled the premises immediately after they did, and shortly thereafter was found by the arresting officers in the company of one of the men. This evidence was amply sufficient to warrant the jury finding defendant was present, aiding and abetting, and that he was guilty of all essential elements of the crime for which he was tried.

We have carefully examined all of appellant's remaining assignments of error, all of which relate to the court's charge

---

---

to the jury, and find them without merit. Considered as a whole, the charge was free from prejudicial error.

No error.

Judges CAMPBELL and MORRIS concur.